Peck, J.,
delivered the opinion of the court:
Thomas W. Kelly, of Detroit, in the State of Michigan, claims by his petition the sum of one hundred and seventy-five dollars, the balance unpaid of the sum of four hundred dollars, which he alleges is due to him for bounty promised, for his enlistment in the service of the United States as a soldier. The petition recites that he enlisted on the 12th day of February, A. D. 1864, in Company D of the Nineteenth Begiment of United States Infantry, to serve for three years. That he served faithfully as a private in said company until the 3d day of October, A. D. 1865, when he deserted, and was absent from duty about six weeks, at the end of which time he voluntarily reported himself as a deserter, whereupon he was returned to his regiment, and was assigned to duty therein without trial for the offence. From that time forward until the 20th April, A. D. 1867, he continued to serve faithfully, and fully made up the time he had been absent as a deserter. On the last above-named day, petitioner alleges he was honorably discharged, his term of enlistment having expired. That the sum now claimed by him as a *482 part of bis bounty was withheld, and has not been paid, because of his desertion.
We find the allegations in the petition to be true, as shown, by the record.
Claimant enlisted on the 12th February, A. D. 1864, and served until the 3d day of October, A. D. I860, one year, seven months, and twenty-one days: at the end of which time he deserted and was absent thirty-ni ne days. After that absence, having voluntarily reported himself as a deserter, he was, by command of Major G-eneral J. J. ltóynolds, upon the recommendation of his regimental commander, “restored to duty without trial, with the condition that he made good the time lost by desertion.” The condition Avas performed by the claimant. He afterwards continued in service until he was discharged by the expiration of his stipulated service, at Fort Gibson, in the military department of Arkansas, on the 20th April, 1867. His discharge is in the usual form of those given to honorably-discharged soldiers, and would escape remark, but lor the voluntary observation of the Adjutant General, in reply to a rule for information from this court, in connection with the discharge, which is as follows: “Except his desertion, his service was honorable.”
We think the law as applied to these facts authorizes us to render a judgment in favor of the claimant for the unpaid bounty, amounting to the sum of two hundred and twenty-five dollars.
There appears to have been some differences of opinion among the officers of the War and accounting Departments, as to the right of the claimant to receive the bounty accrued to him after his desertion and return to service.
We think the reasoning of the Judge Advocate General, which supports the demand, the most equitable and just.
The Assistant Attorney General relies mainly for his defence against the claim upou an argument of the Second Comptroller, which is as follows:
“We have held that, by the regulations of the army, having the force of law, a deserter ipso facto forfeits all pay, &c., due the deserter, and vests the money in the United States, and that even a pardon cannot give him what he has by his own act virtually placed in the Treasury; that he can claim nothing under the contract of enlistment he violated; that, under the *483 act of July 22,1861, a soldier could have a title to the bounty only on honorable discharge after two years’ service, or for wounds received, &c.; that the document itself not saying whether the discharge was honorable or dishonorable, the fact must be determined by proof; that, when it fully appeared by the papers in the case that, during the time for which he was enlisted, he had been guilty of the most dishonorable crime a soldier can commit, viz, desertion, it was not an honorable discharge, and bounty could not be paid; that the bounties paid by instalments are subject to the same general conditions as bounty due under the law of 1861, and instalments remaining unpaid at desertion áre forfeited, and cannot be earned by subsequent return and service; and that, even if there be doubt upon the subject, the benefit of the doubt ought not to be given to the man who deserted his flag and the cause of his country in her hour of need.”
This is a jjatriotic as well as an eloquent view of the matter.
The soldier rests upon his discharge to sustain his reputation in after life, as well as to show his conduct in the past. Can the Comptroller or any other officer controvert its truth by assuming that an offence for which the soldier has atoned, and which has been commuted by those having authority to make the commutation upon conditions complied with, is still flagrant and existing, for which a second forfeiture or punishment is to be exacted or inflicted? We do not feel inclined to excuse or extenuate the desertion, but we think that the contract for continuous service between claimant and defendants, which was broken by the claimant, was revived upon terms and conditions proposed to the claimant, accepted by him, and faithfully observed. This being the case, the claimant has now a right to insist that no other or different consequences or conditions shall be imposed for his misconduct, which might have been, but were not exacted, after he had surrendered himself to receive whatever forfeitures or punishment the United States might choose to demand.
Good faith requires that the soldier, after he has been led to believe by his superior officers, who it is conceded were authorized to excuse his miscouduct, that his offence was condoned, shall be exempt from other penalties, forfeitures, or punishment for the same offence.
The consequences that might follow a deserter as denounced *484 against him by law, are and should be serious. They extend to a loss of citizenship, beside the hazard of incurring the most dreaded of all punishments, the loss of life. It would not be more unreasonable in a legal point of view to visit upon him any of these more serious punishments after his offence had been pardoned, than to deny him Ms bounty.
It is to be observed that this claimant has not been tried by court-martial or otherwise; and that such evidence of his dereliction as is produced is coupled with its condonation, and equally establishes both facts.
Had this claimant died from wounds received in the service after his desertion and restoration, it is probable the law would not permit the withholding’ from his wife and children any bounty that might not have been paid to him.
The Assistant Attorney General, in an additional brief, puts forward the following statements as a completen uthority for denying this claimant his bounty:
[“Memorandum.No. 50.]
“Paymaster General’s Oeeice,.

(l Washington, D. 0,, June 16, 1865.

“The'following decision of the Comptroller of the Treasury is published for the information of all officers of this Department:
IU Treasury Department,

Second Comptroller’s Office, June 16,1865.

Sir: In an interview with the Secretary of War this morning, lie concurred, in the decision heretofore given by me respecting payments of bounty to soldiers who have been deserters during their respective terms of enlistment.
“ ‘ You are therefore respectfully requested to notify paymasters that soldiers who have violated their contracts with the Government, by committing the crime of desertion during the time for which they had enlisted or were drafted, have no legal claim, either to the pay which had accrued at the time of desertion or to any payment of bounty; and that any payments hereafter made in conflict with this decision will be disallowed at the treasury.
“‘Very respectfully, your obedient servant,
iU3. M. BRODHEAD, 2d Comptroller.
u ‘ Gen. B. W. Brice, Paymaster Cen’V
u B. W. BRICE, Paymaster Cen’l.”
*485 “In this matter, under tbe legislation of January 13tb, and March 3d, 1864, this order of the War Department has the force of positive enactment.’’
There are several objections to the argument based upon this circular. There is no order from the War Department produced, but only a statement by the Comptroller that the Secretary of War concurred in some decision about bounties, which the Comptroller before then had made. This belief of the Comptroller is expressed to a military officer, as a warning and caution to the latter and his subordinates to avoid difficulty in the auditing of their accounts by the same Comptroller, and amounts to nothing more. It does not furnish legal evidence of the facts it states, and can only be regarded as the expressed opinions of the Comptroller, who is not tíre head of a department, nor connected in any way with the Department of War, for the head of which he volunteers to stand sponsor. The Comptroller is not authorized to promulgate by authority the opinions of the Secretary of War; even if he were, in order to make those opinions authoritative or obligatory, they must emanate directly from that functionary and under his official sanction. Without these characteristics, his opinions, if ever so correctly stated, have no probative force. They might be accepted as the opinions of an intelligent and distinguished public gentleman, but not as clothed with official authority.
Without extending this discussion, it is enough now to say that as this-judgment will affect a class of cases, or furnish a precedent for the future action of an executive department of the government in the adjustment of such class of cases, and this claimant could not appeal if the judgment were against him, we shall give a judgment for him, to the end that the opinion of the Supreme Court may definitively settle whatever doubts may surround the inquiry, and terminate the difficulties.
Judgment is to be entered for the claimant for the unpaid balance due to him as bounty, amounting to the sum of $225.